

# THE ATTORNEY GENERAL
## OF TEXAS

AUSTIN, TEXAS 78711

WAGGONER CARR
ATTORNEY GENERAL

March 12, 1965

*affirms WW-845 and C-328*

Honorable Robert S. Calvert
Comptroller of Public Accounts
Capitol Building
Austin, Texas

Opinion No. (C-401)

Re: Whether a bonded supplier
is liable to the State
for the collection and
payment of the tax on
special fuels sold and
delivered in bulk
quantities to another
supplier who has not
secured and does not
hold a valid supplier's
permit for the current
year and related

Dear Mr. Calvert:
questions.

You have requested the opinion of this office as to the tax liability of a bonded supplier legally in possession of special fuels who makes bulk sales to unlicensed suppliers (who usually also operate as users), or who makes bulk sales to unlicensed dealers and users whose purchases are predominantly for off-highway use, or who makes bulk sales to purchasers for exclusive non-highway use without securing the signed statement required in subdivision (3) of Article 10.06, Vernon's Civil Statutes.

Article 10.06 makes it unlawful to make bulk sales to any person who (1) is not licensed as a supplier, or (2) is not licensed as a dealer or user of special fuels, or (3) does not furnish a signed statement that none of the special fuels purchased will be delivered by him or permitted by him to be delivered into the fuel supply tanks of motor vehicles.

In connection with your request, you have submitted a statement of the general construction and interpretation which you have placed upon the statutes in administering the Motor Fuel and Special Fuels Tax Acts. Since such administrative interpretation is entitled to great weight, 53 Tex.Jur.2d 259-264, Sec. 177, we quote the following statement thereof.

-1891-

"The legal incidence of the tax on motor fuel and special fuels is upon the ultimate user of the fuels for the propulsion of motor vehicles upon the highways of Texas.

"But since there are millions of highway users the Legislature, wherever it is possible, has imposed the collection of the tax upon the vendor who is usually constituted and licensed by law as a bonded fiduciary or agent of the State for collection purposes.

"In the case of motor fuel (gasoline) 95% of the fuel consumed in the State is used taxable on the highway so the tax collection is imposed on the first sale by the wholesale distributor and tax refunds are authorized on the 5% used off the highways.

"But in case of special fuels (diesel and butanes) the highway use is just the reverse. Only 5% to 10% of the total consumption is used taxable on the highways while 90% to 95% is used off the highway for non-taxable purposes. Hence, the State could not afford to adopt the motor fuel procedure of collecting the tax on the first sale of all special fuels sold in the State and then paying back 90% to 95% in refunds to non-highway users.

"But the Legislature, after determining that most of the special fuels used taxable on the highways was dispensed through retail dealer stations, and storage facilities maintained by bulk users such as bus and truck lines, devised a plan of collecting most of such tax at the wholesale level by suppliers who are licensed and bonded by Article 10.11(1) to make such collections for the State and which would eliminate most of the tax refunds.

"This was accomplished by setting up in one category the dealers and users handling taxable fuels mostly who pay taxes to the supplier, and setting up in another category the dealers and users handling non-taxable fuels mostly who pay any incidental taxes due directly to the State, as follows:

"--1.  Dealers and bulk users whose purchases of special fuels are predominantly (mostly) for delivery into motor vehicles (for taxable use on the highways) are required by Article 10.11(1) to secure non-bonded dealer or non-bonded user permits and are required by Article 10.03(3) to pay the tax to the supplier upon delivery to their respective storages.  If any of such tax paid fuel is thereafter used or sold for use off the highway tax refunds may be filed for such incidental diversions.

"--2.  Dealers and bulk users whose purchases are predominantly (mostly) for use or resale for use non-taxable off the highway, but with some lesser quantities to be delivered by the dealer or user into motor vehicles for taxable use, are required by Article 10.11(1) to secure bonded dealer or bonded user permits (to purchase tax free from suppliers) and are required by Articles 10.03(4) and (5) to report and pay directly to the State the tax on any deliveries made into motor vehicles - unless said taxes have been paid to the supplier (as authorized by Article 10.03(3)).

"With this statutory arrangement the law then specifically provides in Article 10.03(3) that the supplier shall collect the tax on each gallon delivered to non-bonded dealers and users - who are those persons in category 1, whose purchases are predominantly for delivery by them taxable into the fuel supply tanks of motor vehicles.

"The above is the only provision in the law which specifically states that the supplier shall collect the tax on a delivery.

"In the next paragraph, Article 10.03(4) and (5) provides that every dealer and every user, respectively, shall report and pay to this State the tax on each gallon of special fuels delivered by them into the fuel supply tanks of motor vehicles - unless said tax has been paid to a licensed supplier.

"As this Division has heretofore construed the law, Article 10.03(3), places a mandatory duty upon every supplier to collect the tax on each gallon of special fuels delivered to dealers or users whose purchases are predominantly for delivery by them into the fuel supply tanks of motor vehicles - and regardless of whether such dealers or users had exercised their duty of securing the non-bonded permits that the law required them to secure to perform such functions.

"Conversely, if the supplier made such deliveries to unlicensed dealers or users whose purchases were predominantly for use or resale for use non-taxable off the highway for which bonded dealer or bonded user permits are required by law, the supplier would not become liable for the tax on such deliveries (most of which would be presumed to be consumed off the highway) since Articles 10.03(4) and (5), provide that every dealer and every user shall report and pay to this State the tax on each gallon of special fuels delivered by them into the fuel supply tanks of motor vehicles - where such taxes have not been paid to a licensed supplier.

" . . .

" . . .

"Our thought that the Legislature intended to punish such unlawful sales by misdemeanor or statutory civil penalties, rather than by making the selling supplier liable for the tax thereon, was based on the fact that in the usual course of operations by far the greater portion of the fuel purchased will move ultimately into non-taxable channels off the highway."

We are in agreement with your conclusion insofar as non-taxable use is concerned for the reason that no tax ever accrued absent such taxable use. It is well settled that the tax in question is an indirect or "excise" tax and that for any tax to be due the State, the special fuels must be used

in motor vehicles operated on the public highways of this
State. State v. City of El Paso, 135 Tex. 359, 143 S.W.2d
366 (1940). We do think, however, that the bonded supplier
would be liable for any taxes that did actually accrue by
virtue of any taxable use as well as subject to the mis-
demeanor and civil penalties imposed by Articles 10.25 and
10.18.

More specifically therefore, our conclusions are as
follows:

(1) Even though there is no specific provision in the
Special Fuels Tax Act which requires a bonded supplier to
collect the tax on special fuels sold to an individual
supplier, the bonded supplier has made an unlawful bulk sale
under Article 10.06. We hold that the liability of a bonded
supplier who has made such an unlawful sale to an unlicensed
supplier is limited to the amount of the tax which accrued
on such portions of the special fuels as were actually put
to a taxable use by the unlicensed supplier's permitting
the use of said fuels in motor vehicles on the highway.
We reiterate that the bonded supplier in such instances is
subject to misdemeanor and civil penalties as imposed by
Articles 10.25 and 10.18.

(2) Where a bonded supplier makes bulk sales and
deliveries of special fuels to unlicensed dealers or users
whose purchases are predominantly for off-highway use,
the bonded supplier has made unlawful bulk sales under
Article 10.06. The bonded supplier is liable by reason
of said unlawful sales for the amount of any taxes which
did accrue by virtue of taxable use and is further subject
to the misdemeanor and civil penalties imposed by Articles
10.25 and 10.18.

(3) In those instances in which a bonded supplier makes
bulk sales to purchasers for exclusive non-highway consumption
without securing the signed statement required by sub-
division (3) of Article 10.06 that none of the special fuels
purchased will be delivered by him or permitted by him to be
delivered into the fuel supply tanks of motor vehicles,
such sales are unlawful. By virtue of this fact, the bonded
supplier is liable for such taxes as accrued by virtue of
taxable use of any portion of said fuels on the public highways
of this State. Again the bonded supplier is subject to the
misdemeanor and civil penalties imposed by Articles 10.25 and
10.18.

You have asked that we advise you as to the method of determining the amount of the bonded supplier's tax liability in cases of the type heretofore considered. Article 10.16 provides that when any supplier, dealer or user fails to keep the records, issue the invoices or file the reports required by Chapter 10, there is a prima facie presumption that the special fuels shown by duly verified audit by the Comptroller, or his authorized representative, to have been delivered to such supplier, dealer or user and unaccounted for at each place of business or of storage from which special fuels were sold, delivered or used for any taxable purposes. The Comptroller is authorized to fix the amount of the taxes, penalties and interest due the State from such records of delivery or from any information available to him. If the tax claim so established is not paid, the claim and any audit made by the Comptroller or any report filed by the supplier, dealer or user is admissible in evidence in any judicial proceedings filed by the Attorney General as prima facie evidence of correctness of said claim or audit. However, Article 10.16 further expressly provides "that the prima facie presumption of the correctness of the claim may be overcome, upon the trial, by evidence adduced by said supplier, dealer or user."

Since under Article 10.21 the Comptroller is expressly given the power and authority to promulgate rules and regulations "not inconsistent with this law", we think that if the bonded supplier in the above instances furnished the Comptroller with acceptable evidence or proof as to that part of the fuel unlawfully sold and put to non-highway use, you could allow a credit against the tax liability charged to him, and thus avoid the court proceeding contemplated by Article 10.16.

You have directed our attention to Opinion No. WW-845 (1960) in connection with the special fuels tax law as it pertains to "user permits". The Opinion states that "No provision of the law requires or authorizes the supplier to collect the tax from any bonded user, or any person operating only in the capacity of a bonded user." (Emphasis supplied) This statement is in conflict with Opinion No. C-328 insofar as Opinion No. C-328 held that the tax must be collected by the supplier even in cases where the dealers and users were acting in the capacity of bonded dealers and bonded users but had not been properly licensed.

Opinion No. WW-845 made the following ruling:

> "A special fuels 'user' who is
> maintaining storage tanks in Texas
> and purchasing special fuels from
> suppliers in bulk quantities predominantly
> for delivery into fuel supply tanks of his
> motor vehicles, and is also operating a
> number of the motor vehicles, in interstate
> commerce, necessitating importation of
> special fuels in the fuel supply tanks of
> such vehicles, is required to obtain both
> a non-bonded user permit and bonded user
> import permit."

We quote the following paragraph from pages 2 and 3 of Opinion WW-845:

> "A wholesale supplier may sell only
> to those holding permits as bonded or
> non-bonded users or dealers. He is
> required by Article 10.03(3) to collect
> the tax on each gallon of special fuels
> delivered to non-bonded users. No pro-
> vision of the law requires or authorizes
> the supplier to collect the tax from any
> bonded user, or any person operating
> only in the capacity of a bonded user."

It is evident that the last sentence above quoted was un-necessary to the holding of the Opinion. Further, it is in conflict with the first sentence of the above quoted paragraph and with Article 10.09. Under the provisions of Article 10.09, only a person who has acquired a permit can legally act in the capacity of a bonded user. Article 10.09 reads as follows:

> "Every person defined herein as a
> supplier, dealer or user shall secure
> from the Comptroller the kind and class
> of permit required herein to act in such
> capacities or to perform such functions."

We therefore affirm that portion of Opinion No. WW-845 insofar as it pertains to the "user permits" involved. We are specifically not in accord with its statement as to persons operating only "in the capacity of" bonded users. Opinion No. C-328 is predicated upon the proposition that a taxable use was made of the special fuels involved. Its statement to the effect that the tax must be collected by the supplier even when

the dealers and users were acting in the capacity of bonded dealers and bonded users but had not been properly licensed, is consistent with the result reached. It is therefore reaffirmed.

## S U M M A R Y

A bonded supplier who has made an unlawful bulk sale to an unlicensed supplier is liable for the amount of tax which accrued on such portions of the special fuels as were put to a taxable use by the unlicensed supplier and is subject to misdemeanor and civil penalties. A bonded supplier who has made unlawful bulk sales and deliveries of special fuels to unlicensed dealers or users whose purchases were predominantly for off-highway use is liable for the amount of tax which accrued by virtue of taxable use and is subject to misdemeanor and civil penalties. A bonded supplier who made bulk sales to purchasers for exclusive non-highway consumption without securing the signed statement required by Article 10.06(3) that none of the special fuels purchased will be delivered by him or permitted by him to be delivered into the fuel supply tanks of motor vehicles is liable for such taxes as accrued by virtue of taxable use and is subject to misdemeanor and civil penalties. When any supplier, dealer or user fails to keep the records, invoices or reports required by the Special Fuels Tax Act, there is a prima facie presumption that the special fuels shown by the Comptroller's audit to have been delivered to such supplier, dealer or user and unaccounted for at each place of business or storage have been used for taxable purposes. If the claim so established is not paid, the prima facie presumption of its correctness may be overcome in any suit for the collection thereof by evidence adduced by the supplier, dealer or user. The Comptroller has authority to promulgate rules and regulations

for the enforcement of the Special Fuels
Tax Law.  If the Comptroller is furnished
with proof as to that part of the fuel
unlawfully sold and put to non-highway use,
the Comptroller may allow a credit against
the tax claim.  Opinions No. WW-845 (1960)
and C-328 (1964) are reaffirmed.

                    Yours very truly,

                    WAGGONER CARR
                    Attorney General of Texas


                    By: Marietta McGregor Payne
                        Marietta McGregor Payne
                        Assistant


MMcGP:dl

APPROVED BY OPINION COMMITTEE

W. V. Geppert, Chairman
John Banks
James Broadhurst
Sam Kelley
Grady Chandler

APPROVED FOR THE ATTORNEY GENERAL
By:     Stanton Stone